IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY BOATNER, JR. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-595 |
| | ) | |
| v. | ) | |
| | ) | District Judge Arthur J. Schwab |
| ROBERT SALEM, Police Chief | ) | Magistrate Judge Lisa Pupo Lenihan |
| Of New Castle, PA, | ) | |
| CORPORAL SEELBAUGH, | ) | |
| JASON DIMUCCHIO, Director | ) | |
| Of Public Safety, Lawrence County Housing | ) | |
| Authority, JUSTIN WARREN, Patrolman, | ) | |
| AMANDA VENTURA, Patrolman, JOHN | ) | |
| MELNICK, Patrolman, ROBERT PICHE, | ) | ECF Nos. 38, 50 |
| Patrolman, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendant Jason DiMucchio ("DiMucchio") (ECF No. 38) be granted. It is also recommended that the Motion for Summary Judgment filed by Defendants John Melnik, Robert Piche, Robert Salem, Corporal Seelbaugh, Amanda Ventura, and Justin Warren (collectively "Police Defendants") (ECF No. 50) be denied without prejudice, and that the above captioned case be stayed and administratively closed until the underlying criminal action against Plaintiff in the Court of Common Pleas of Lawrence County is concluded.

### II. REPORT

Presently before the Court are Motions for Summary Judgment filed by all Defendants. Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violation of his rights

pursuant to the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

A. FACTS

The following facts are taken from the parties' submissions and are undisputed unless otherwise indicated.

On June 18, 2014, New Castle Police Officers responded to a 911 call reporting a stabbing at Skyview Towers. (ECF Nos. 52 & 63 at ¶ 1.) Detective George and Defendant Lt. Seelbaugh heard officers radio that the actor had locked himself inside his apartment and refused to answer the door. (ECF Nos. 52 & 63 at ¶ 2.) Thereafter, officers responded to the scene. (ECF Nos. 52 & 63 at ¶ 3.) Defendant Seelbaugh arrived with a 40 mm Penn Arms launcher equipped with CTS sponge rounds. (ECF Nos. 52 & 63 at ¶ 4.) When Seelbaugh arrived on the scene, officers were standing outside of apartment 1004 knocking and attempting to make contact with the occupant. (ECF Nos. 52 & 63 at ¶ 5.) Lawrence County Emergency Operations Center ("LCEOC") advised that they were on the phone with the actor who wanted to know why the police were outside his door. (ECF Nos. 52 & 63 at ¶ 6.) Seelbaugh advised the LCEOC to notify the actor that he was under arrest and he should come to the door. LCEOC then advised Seelbaugh that the actor wanted to know why he was under arrest. (ECF Nos. 52 & 63 at ¶ 7.) Seelbaugh radioed back to LCEOC that Plaintiff Harry Boatner, Jr. ("Plaintiff") was under arrest for aggravated assault. (ECF Nos. 52 & 63 at ¶ 8.)

A few minutes after officers arrived, Defendant DiMucchio, the Director of Public Safety for the Lawrence County Housing Authority, was directed by the officers to use the Housing Authority's master key so that they could enter Plaintiff's apartment. (ECF Nos. 52 & 63 at ¶ 9.) Plaintiff admits that DiMucchio was forced by the police to unlock the door, although Plaintiff

contends DiMucchio had no authority to do so. (ECF No. 63 at ¶ 5.) The officers entered the apartment. (ECF Nos. 52 & 63 at ¶ 10.)

Seelbaugh encountered Plaintiff seated on his couch with his legs propped on the coffee table. (ECF Nos. 52 & 63 at ¶ 11.) At this point, the parties dispute what happened next. Defendants state that Seelbaugh advised Plaintiff that he was under arrest and to show his hands. Defendants further state that Plaintiff had a cordless phone in his right hand and his left hand was hidden from view. According to Defendants, Plaintiff looked at Seelbaugh, then looked away, and did not acknowledge Seelbaugh's commands. Plaintiff continued to ignore several more commands by Seelbaugh to show his hands. Seelbaugh then warned Plaintiff that he would be shot with the launcher if he continued to disobey Seelbaugh's commands to show his hands. (ECF No. 52 at ¶¶ 12-15.) Defendant Seelbaugh stated that "[k]nowing that Boatner had been armed at some point with a knife and considering his refusal to obey [] commands to show his hands, Seelbaugh warned him that he would be shot with the launcher." (ECF No. 52 at ¶ 15.)

Plaintiff states that he had no comprehension of the commands given because of the following: he had been drinking; five (5) police officers and a housing authority member had entered his apartment and were all shouting various commands at him; and the television was on. (ECF No. 63 at ¶¶ 12-14.) Plaintiff continues that "through the shock and fear [he] lacked understanding of what was required" of him at this time. (ECF No. 63 at ¶¶ 12-14.) Finally, Plaintiff asserts that the police officers had no information to suggest that he was armed because the record reflects that the stabbing victim did not give a statement to Defendant Seelbaugh until after the alleged illegal entry when Seelbaugh interviewed the victim in the hospital. (ECF No. 63 at ¶ 15 (citing Seelbaugh Affidavit, ECF No. 51-1 at ¶¶ 9-11).) Although Plaintiff admits that

he was drinking, he indicates that there is no record evidence that he was drunk on this occasion. (ECF No. 63 at ¶ 15.)

The parties agree that Defendant Seelbaugh then engaged Plaintiff with one round of CTS 40mm less lethal sponge round in the right thigh. Plaintiff's only reaction to being struck was to drop the phone and show his left hand. (ECF Nos. 52 & 63 at ¶ 16.) Once Seelbaugh saw that Plaintiff was unarmed, Seelbaugh approached him and grabbed his right hand and rolled him over. Plaintiff began to struggle and continued to ignore commands to put his hands behind his back. With the assistance of the other officers present, Plaintiff was handcuffed. (ECF Nos. 52 & 63 at ¶ 17.) Plaintiff does not dispute the above because he does not remember what happened after he was shot. (ECF No. 63 at ¶ 17.) Plaintiff was then transported to the New Castle Police Station. (ECF Nos. 52 & 63 at ¶ 18.)

Defendant Seelbaugh then went to the Jameson Hospital Emergency Room to speak with the victim. (ECF Nos. 52 & 63 at ¶ 19.) During the interview, the victim informed Defendant Seelbaugh that she left the apartment at 9:00 a.m. She further stated that Plaintiff had already been drinking a pint of vodka. She stated that she returned to the apartment around 1:00 p.m., that Plaintiff was now drinking from another pint of vodka, and was also drinking a 40 ounce beer. The victim stated that Plaintiff began accusing her of cheating on him and they began to argue. Plaintiff then told the victim to go away and leave him alone. The victim stated that Plaintiff then produced a knife in his left hand that was operated with a button, and he began to come towards her. The victim stated that Plaintiff lunged towards her and she blocked the knife with her right arm. She stated that this blocking action caused the knife to slash her in the left arm which was covering her abdomen. The victim stated that Plaintiff slashed again, causing a second cut to her left arm. (ECF Nos. 52 & 63 at ¶ 20.) She further indicated that she began

moving towards the door, ran out, and called 911. The victim kept repeating: "He was going to stab me in the abdomen." (ECF Nos. 52 & 63 at ¶ 21.) Finally, the victim stated that Plaintiff was drunk, that he had broken her ribs before, and that she was afraid of him. (ECF No. 52 at ¶ 23.) Plaintiff states that there is no record evidence that he was drunk or that he had broken the victim's ribs in the past. (ECF No. 63 at ¶ 23.)

Thereafter, on December 6, 2014 at approximately 7:28 p.m., officers were dispatched to Skyview Towers for the report of a verbal argument on the tenth floor of the building in the area of apartment 1004. LCEOC also advised that the caller reported possibly hearing one (1) gunshot. (ECF Nos. 52 & 63 at ¶ 24.) Upon arrival, officers could hear a male voice inside of apartment 1004. New Castle Police Department officers had been dispatched to apartment 1004 multiple times for domestic disturbances including assaults with a knife. (ECF Nos. 52 & 63 at ¶ 25.) Officers knocked on the door multiple times and gave verbal commands to Plaintiff to open the door. Plaintiff was advised that it was the New Castle Police Department knocking on the door. (ECF Nos. 52 & 63 at ¶ 26.) The parties dispute whether Plaintiff gave permission for the officers to enter the apartment. (ECF Nos. 52 & 63 at ¶ 26.) Plaintiff states that he asked if they had a warrant, and when the officers responded in the negative, Plaintiff refused to open the door. (ECF No. 63 at ¶ 26.) According to Plaintiff, the officers became very angry at his refusal to open the door, and kept screaming: "open the door, come on out with your hands up, we know she's in there." (ECF No. 63 at ¶ 26.) Plaintiff states that at that time he was the only one in the apartment. (ECF No. 63 at ¶ 26.) Thereafter, according to Plaintiff, the officers broke the door down. (ECF No. 63 at ¶ 26.) According to Defendants, officers forced entry into the apartment to ensure that no victims were inside. (ECF No. 52 at ¶ 27.) Plaintiff states that he was not asked by any of the officers whether anyone else was inside his apartment. (ECF No. 63 at ¶ 27.)

5

Once inside the apartment, Defendant Officer Melnik[1] gave Plaintiff multiple verbal commands to "drop it." Plaintiff then placed a revolver handgun on a coffee table in the living room and Plaintiff was then taken into custody. (ECF Nos. 52 & 63 at ¶ 27.)

Plaintiff was then transported to the New Castle Police Department by Defendant Officer Warren. The handgun was secured and five (5) live rounds and one (1) spent shell casing were removed from the cylinder. Defendant Officer Melnik advised that once entry was gained into the residence, he observed Plaintiff pointing the handgun at officers, but Plaintiff did comply after being given the verbal command to drop it. Officers were unable to determine if Plaintiff had discharged the firearm inside of the apartment. (ECF Nos. 52 & 63 at ¶ 28.)

After this alleged illegal entry on December 6, 2014, officers spoke with witness Virginia Horning, who advised that she heard people arguing in the hallway and that she heard a "loud crack at the window." (ECF Nos. 52 & 63 at ¶ 29.) Defendant Officer Piche reviewed Plaintiff's criminal history and learned that Plaintiff is a person not to possess a firearm due to multiple felony convictions including aggravated assault, robbery, and burglary charges. (ECF Nos. 52 & 63 at ¶ 30.)

Plaintiff is awaiting trial on the following charges as a result of the events of June 18, 2014, and December 6, 2014:

> Possession of Firearm Prohibited—18 Pa. Cons. Stat. Ann. § 6105;
> Aggravated Assault–18 Pa. Cons. Stat. Ann. § 2702 (a)(1)&(6);
> Simple Assault—18 Pa. Cons. Stat. Ann. § 2701 (a)(2)(3);
> Recklessly Endangering Another Person—18 Pa. Cons. Stat. Ann. § 2705;
> Resisting Arrest—18 Pa. Cons. Stat. Ann. § 5104;
> Harassment—18 Pa. Cons. Stat. Ann § 2709 (a)(1).

*See* Court of Common Pleas of Lawrence County Docket Sheets and Court Summary, *Commonwealth v. Boatner*, CP-37-CR-0001232-2014 & CP-37-MD-0000344-2014 https://ujsportal.pacourts.us/DocketSheets/CP.aspx.

---

[1] Plaintiff incorrectly spells Defendant Melnik's name in the case caption as "Melnick."

B.  LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact.  *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25).  Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e) (1963)).  *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex*, 477 U.S. at 322).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  *See* Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

7

Finally, the Court must liberally construe the factual allegations of Plaintiff's complaints because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

C. <u>ANALYSIS</u>

1. <u>Motion for Summary Judgment filed by Defendant DiMucchio (ECF No. 38)</u>

In support of his Motion for Summary Judgment, Defendant DiMucchio argues that he is protected by various forms of immunity, and acted pursuant to the authority granted to him by the terms of the Lease Agreement between the Housing Authority of Lawrence County and Plaintiff. (ECF No. 39 at 5-8.) Plaintiff responds that DiMucchio was engaged in criminal and noncriminal acts that defeat any claim to immunity. (ECF No. 48 at 3-14.)

Liberally construing Plaintiff's Complaint to include claims against Defendant DiMucchio in his personal and official capacities, DiMucchio is entitled to judgment as a matter of law. First, as to the claim against him in his official capacity, DiMucchio is protected by Eleventh Amendment immunity.[2] The Eleventh Amendment bars suits against a state in federal court by private parties.[3] *Laskari v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the

---

[2] The Eleventh Amendment of the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. CONST. amend. XI.

[3] A claim against a state official in his or her official capacity "is no different from a suit against the State itself." *Will v. Michigan*, 491 U.S. 58, 71 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

8

relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Pugh*, 438 U.S. at 781)). Eleventh Amendment immunity protects entities created by state governments that operate as alter egos or arms of the State. *See Lake Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 402 (1979). The Lawrence County Housing Authority was created by the Commonwealth and in no way shall be deemed an instrumentality of the county it serves. *See* 35 P.S. § 1542(a)-(d) & § 1544(a). Therefore, the Lawrence County Housing Authority is a department or arm of the State. In addition, none of the factual allegations contained in Plaintiff's Complaint indicate or suggest that it has consented to be sued by Plaintiff, a private party, in this federal court. Thus, the Lawrence County Housing Authority is immune from suit pursuant to the Eleventh Amendment, and consequently, this Court lacks subject matter jurisdiction over DiMucchio in his official capacity.

Moreover, as to Plaintiff's Fourth Amendment claim against DiMucchio in his individual capacity, he is protected by sovereign immunity. Plaintiff alleges that DiMucchio conspired with police to illegally enter Plaintiff's home. (ECF No. 4 at 3.) The undisputed facts of record, however, indicate that DiMucchio was acting within the scope of his employment as the Director of Public Safety for the Lawrence County Housing Authority when he was directed by officers to unlock Plaintiff's apartment door. The Pennsylvania General Assembly passed a comprehensive tort claims act which provides for sovereign immunity for the Commonwealth and its officials and employees except in nine limited areas.[4] 1 Pa. Cons. Stat. § 2310. Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity when the employee was acting within the scope of his or her employment. Therefore, because it is

---

[4] The nine exceptions, which have no application to the case at bar, are in the areas of motor vehicle operation, medical malpractice, care of personal property, dangerous conditions of real estate, dangerous conditions of highways, care of animals, liquor store sales, the activities of the National Guard, and the administration, manufacture and use of a toxoid or vaccine. 42 Pa. Cons. Stat. § 8522(b)(1)-(9).

undisputed that DiMucchio was acting within the scope of his employment at the time he opened Plaintiff's apartment door with a master key, he is entitled to sovereign immunity for those claims brought against him in his individual capacity.[5]

In addition, pursuant to the terms of the Lease Agreement, DiMucchio was authorized to enter Plaintiff's apartment under the circumstances. The Lease Agreement, executed by Plaintiff, provides in relevant part as follows:

> HACL [Housing Authority of the County of Lawrence] may enter the Resident's dwelling unit at any time without advance notification when there is reasonable cause to believe that an emergency exists that poses an immediate threat to the safety and/or welfare of Residents and/or employees.

(Residential Lease Agreement, ECF No. 39-2 at 11.) Plaintiff argues that because the stabbing victim was not a resident of Skyview Towers, DiMucchio had no reasonable cause to believe that an emergency existed that posed an immediate threat to the safety and/or welfare of a Resident as defined by the terms of the Lease Agreement. At the time that DiMucchio provided the master key to unlock Plaintiff's apartment for police, the undisputed facts of record support his assertion that he had reasonable cause to believe that an emergency situation existed and that the safety or welfare of the Plaintiff or other Residents may have been compromised as well: there was a stabbing victim in the lobby of Skyview towers where Plaintiff was a resident; the LCEOC was in communication with Plaintiff inside his apartment regarding the stabbing; police were in communication with the LCEOC and instructed them to inform Plaintiff that he was under arrest for aggravated assault; DiMucchio would not have known at this point whether Plaintiff himself was injured as a result of the altercation, or whether other residents may have been involved.

---

[5] Plaintiff argues that the immunity exception relating to the care, custody or control of personal property applies. (ECF No. 48 at 3.) The law is clear, however, that in order for this immunity exception to apply, the personal property *itself* must cause the injury, and not merely facilitate it. *See Pennsylvania State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Cmwlth. 2003) (discussing *DER v. Myers*, 581 A.2d 696 (1990)).

Therefore, DiMucchio had reasonable cause to believe that this scenario constituted an emergency that posed an immediate threat to the safety and welfare of Plaintiff and possibly other residents.[6]

For all the foregoing reasons, Defendant Jason DiMucchio's Motion for Summary Judgment should be granted.

> 2. Motion for Summary Judgment filed By Police Defendants Robert Salem, Corporal Seelbaugh, Justin Warren, Amanda Venture, John Melnik, and Robert Piche (ECF No. 50)

As noted above, the following criminal charges remain pending against Plaintiff in the Court of Common Pleas of Lawrence County:

> Possession of Firearm Prohibited—18 Pa. Cons. Stat. Ann. § 6105;
> Aggravated Assault–18 Pa. Cons. Stat. Ann. § 2702 (a)(1)&(6);
> Simple Assault—18 Pa. Cons. Stat. Ann. § 2701 (a)(2)(3);
> Recklessly Endangering Another Person—18 Pa. Cons. Stat. Ann. § 2705;
> Resisting Arrest—18 Pa. Cons. Stat. Ann. § 5104;
> Harassment—18 Pa. Cons. Stat. Ann § 2709 (a)(1).

Plaintiff's § 1983 claims presently before the Court include the following:

> Malicious prosecution pursuant to the Fourth Amendment;
> False arrest pursuant to the Fourth Amendment;
> Excessive force pursuant to the Fourth Amendment;
> Excessive force pursuant to the Substantive Due Process Clause of the Fourteenth Amendment;
> Illegal search and seizure pursuant to the Fourth Amendment; and
> Warrantless entry into a residence pursuant to the Fourth Amendment.

---

[6] Likewise, DiMucchio is protected by qualified immunity in that even if he did violate Plaintiff's Fourth Amendment rights, he made a reasonable mistake as to the lawfulness of his actions in providing the master key to police officers in light of the authority granted to him under the terms of the Lease Agreement. That is, a reasonable public safety director in DiMucchio's position could have believed that his conduct comported with established legal standards. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Pursuant to the guidance set forth by the United States Supreme Court in *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007), the district court should stay the action as it relates to the Police Defendants. In *Wallace,* the Supreme Court noted as follows:

> If a plaintiff files a false-arrest claim before he has been convicted, (*or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial*), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. *See* [*Heck v. Humphrey*, 512 U.S. 477,] 487-488, n.8 [1994] (noting that "abstention may be an appropriate response to the parallel state-court proceedings"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. *Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck*, 512 U.S. [] at 487.

*Wallace*, 549 U.S. at 393-94 (emphasis added) (parallel citations omitted). Plaintiff's § 1983 claims are related to rulings that will likely be made in the underlying criminal trial in Lawrence County. Moreover, Plaintiff's pending civil action could undermine the findings in the parallel state court criminal proceeding if Plaintiff is ultimately convicted, an outcome forbidden by *Heck*. Therefore, it is recommended that the district court stay and administratively close the above captioned case as it relates to the Police Defendants until the underlying criminal action against Plaintiff in the Court of Common Pleas of Lawrence County is concluded. Thereafter, the Police Defendants may move to reopen the case and refile their Motion for Summary Judgment.

### III. CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant Jason DiMucchio (ECF No. 38) be granted. It is further

recommended that the Motion for Summary Judgment filed by the Police Defendants John Melnik, Robert Piche, Robert Salem, Corporal Seelbaugh, Amanda Ventura, and Justin Warren (ECF No. 50) be denied without prejudice, and that the above captioned case be stayed and administratively closed until the underlying criminal action against Plaintiff in the Court of Common Pleas of Lawrence County is concluded. Thereafter, the Police Defendants may move to reopen the case and refile their Motion for Summary Judgment.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: December 18, 2015				BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:   Harry Boatner, Jr.
      111 S. Milton Street
      New Castle, PA  16101-3593

      All counsel of record
      Via electronic filing